**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LEONARD IACONO, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>   v.<br><br>RELIASTAR LIFE INSURANCE COMPANY OF NEW YORK; PAT POSTS 1-10 and ABC CORPS. 1-10 (names being fictitious and unknown),<br><br>                    Defendants. | Civil Action No._____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Leonard Iacono ("Iacono" or "Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant, ReliaStar Life Insurance Company of New York ("ReliaStar" or "Defendant"), demanding a trial by jury, and alleging as follows:

### NATURE OF THE CASE

1. This is a proposed class action seeking redress for Defendant's unconscionable and deceptive[1] practices in depriving purchasers of flexible premium adjustable life insurance policies of an option promised in their policies that allowed them to exchange their policies for a different kind of life insurance (the "Exchange Option," quoted in paragraph 11 below) without giving notice that the Exchange Option would not be available.

2. Defendants' deceptive practice of depriving policyowners of a valuable option without notice violates state and common law, as detailed herein. As such, Plaintiff asserts claims on his behalf and on behalf of all owners of Defendant's flexible premium adjustable life policies

---
[1] The terms "deceptive," "deceive," "deceptively," and "deception" encompass other descriptive terms, including various forms of the words: mislead, misrepresent, untrue, unfair, false, disparage, and unlawful.

1

under which the Exchange Option became unavailable without notice for Defendant's breach of contract, including breach of implied covenant of good faith and fair dealing; fraudulent concealment; and violations of New York General Business Law § 349.

## PARTIES

**A.      Plaintiff.**

3.      Plaintiff is a citizen of New York. He resides in Suffolk County, New York, and has been a holder of the life insurance policy involved in this case throughout the Class Period.

**B.      Defendant.**

4.      Defendant ReliaStar Life Insurance Company of New York is a subsidiary of Voya Financial, Inc. ("Voya"), and maintains its main administrative office at 1000 Woodbury Road, Suite 208 in Woodbury, New York.

5.       In 2016, Voya halted sales of most of its individual life insurance products, without notifying its ReliaStar policyholders who had options to exchange their existing policies for other individual life insurance products.

6.      At all times relevant hereto, the defendants, Pat Posts 1-10 and ABC Corps 1-10 (names being fictitious and unknown) were agents, servants, employees, or subsidiaries of Defendants, who were responsible for the decisions as to what insurance products ReliaStar would offer and for the notifications to current policyholders about those decisions.

## JURISDICTION AND VENUE

7.      This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), under 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any

defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges there are at least 100 members in the proposed Class (as defined below), the total claims of the proposed Class members are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, and a member of the proposed Class is a citizen of a State different from the State of citizenship of Defendant.

8. This Court has personal jurisdiction over Defendant for reasons including but not limited to the following: Plaintiff's claims arise out of Defendant's conduct within the State of New York, and Defendant has its principal administrative office within the State of New York.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant does business throughout this District, Plaintiff purchased his life insurance policy in this District, and Plaintiff resides in this District.

## GENERAL ALLEGATIONS

10. Effective February 17, 1989, Plaintiff Leonard Iacono acquired a Flexible Premium Adjustable Life Policy, Policy No. NY0017620R, from Lincoln Security Life Insurance Company, the predecessor by merger of ReliaStar ("the Policy"). The Policy provided a death benefit of $178,000. Iacono faithfully paid all required premium to keep the Policy in force.

11. The Policy contained the following provision starting at approximately the middle of the 17th of 21 pages, under a heading at the top of the page which said "**INSURANCE COVERAGE PROVISIONS** (Continued)":

> "EXCHANGE: You may exchange this Policy for a new Policy. Such exchange may be to any plan of whole life or endowment that we issue at the time of the exchange, except:
> (1) Flexible premium adjustable life insurance; or
> (2) Adjustable cash value plans.
> You may not exchange the Policy for Term Insurance.
>     Written notice for such exchange must be given to us 31 days in advance.
>     Evidence of insurability will not be required, this Policy must be

3

surrendered. The amount of insurance on the new Policy may be for any amount up to, but not more than, (a), plus (b), less (c), where:

(a) is the current amount of the Insured's Death Benefit under this Policy.
(b) is the cash value of the new Policy on the Date of Exchange.
(c) is the then current cash value of this Policy.

We will issue the new Policy in the same premium rate class as this Policy. We will calculate the premium for the new Policy according to the rates in effect for the age and premium rate class of the Insured at the time of exchange. All plans of insurance available for exchange are subject to plan requirements. Such new Policy will be effective on the date of termination of this Policy.

MATURITY DATE DEFINED: The Maturity Date is the date on which the Policy matures. It is also the latest date on which you may elect to terminate coverage, to stop paying premiums, and to start receiving any remaining cash surrender value." This provision is referred to in this Complaint as the "Exchange Option".

12. Many other flexible premium adjustable life insurance policies issued by ReliaStar or its predecessor by merger contained the same or a similar provision allowing the policyholder to exchange into any available whole life or endowment policy ReliaStar issued at the time of the exchange.

13. In, about, or before 2016, without giving notice to Plaintiff or any other policyholders, or even to its policy selling and servicing agents, ReliaStar ended sales of whole life or endowment policies. Without advising Plaintiff or its other holders of flexible premium adjustable life policies, ReliaStar simply eliminated the Exchange Option described above by having no whole life or endowment policies available for individuals to exchange into.

14. On January 19, 2019, Voya Customer Service sent Plaintiff a letter notifying him that the Policy would mature on February 17, 2019, and that as long as the Policy remained in force to maturity, ReliaStar would extend the coverage at no cost with a death benefit equivalent to the Net Account Value at the time of maturity. In Plaintiff's case, that Net Account Value was only $2,514.04. The letter did not mention, refer to, or give any notice of the Exchange Option that the Policy said would be available to Plaintiff, nor did Voya or ReliaStar give any separate

4

notice to Plaintiff of any deadline for exercising the Exchange Option identified above. The Policy itself specifies no deadline. The January 19, 2019 letter did not reach Plaintiff when originally sent. Voya did not mail a copy of this notice to the address of Plaintiff's broker of record.

15. Neither Voya Customer Service nor ReliaStar included notice of the Exchange Option to any other Class members in the notices of maturity of their policies, nor did either of them give separate notice to Class members of any deadline for exercising their Exchange Options.

16. On May 29, 2019, Steven Roth of Wealth Management International, Inc., who is a licensed California Life and Disability Analyst as well as a licensed life agent, wrote to ReliaStar on Plaintiff's behalf inquiring as to why various options available under the Policy, including the Exchange Option, were not offered to Plaintiff in the January 19, 2019 letter and why the January 19, 2019 letter had not been copied to Plaintiff's servicing agent. Mr. Roth also noted in that letter that a duplicate of the January 19, 2019 letter eventually was sent to Plaintiff, but not until after maturity of the Policy. Mr. Roth attached copies of pages from the Policy setting forth all the options afforded by the Policy, including the Exchange Option quoted above.

17. On June 19, 2019, Rebecca Nielsen, Senior Compliance Analyst for ReliaStar, responded to Mr. Roth's May 29, 2019 letter by writing a letter directly to Plaintiff. In that letter, Ms. Nielsen explained that ReliaStar needed an authorization to direct communications to Mr. Roth, but that ReliaStar had properly administered the Policy and expected its insureds to retain their policies in a safe place and keep track of when they would mature. Ms. Nielsen asserted that policyholders had an obligation to periodically review the coverage and ask questions of ReliaStar or the servicing agent. She acknowledged that the Policy offered the benefits noted in Mr. Roth's letter, and that maturity notices such as the January 19, 2019 letter are not sent to the servicing agents. Ms. Nielsen also noted that upon maturity, if the Policy were still in force, ReliaStar as a

5

company practice extended coverage with a death benefit equal to the cash value, or Net Account Value, as of the maturity date.

18. On June 25, 2019, Mr. Roth wrote to Ms. Nielsen enclosing an authorization; noting that she had not disputed his interpretation, set forth in his letter of May 29, 2019, that there was no stated deadline for exercising the various options in the Policy, including the Exchange Option; asking why the maturity notice was not sent to servicing agents; and reiterating the question from his May 29, 2019 letter as to why the various options, other than the death benefit extension, were not set forth in the maturity notice

19. After multiple follow-up requests from Mr. Roth, Ms. Nielsen responded to his June 25, 2019 letter on July 29, 2019. In that letter, on behalf of ReliaStar, she disclosed *for the first time* that the Exchange Option quoted above was not available at the time Plaintiff's Policy matured because ReliaStar had not issued whole life or endowment products "for many years." She offered no explanation as to why no prior notice of this fact, or this change in practice, had been given, or why ReliaStar had allowed Plaintiff's Policy, and presumably many other policies, to continue to offer a benefit that ReliaStar knowingly would not fulfill. In addition, Ms. Nielsen said other options available under the Policy were not set forth in the maturity notice either because they were typically exercised before maturity or because they would only provide the equivalent of the extended death benefit ReliaStar had put in place for Plaintiff. She reiterated ReliaStar's position that it was not a company practice to provide certain notices to its servicing agents, without explaining why other than to say the agents had on-line access. Ms. Nielsen also reiterated ReliaStar's position that "[i]t is the policy owner's responsibility to know what was purchased and keep their policy in a safe place for future reference."

441468

## CLASS ALLEGATIONS

20. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following proposed national class:

> All persons in the United States and its territories who own or owned a flexible premium adjustable life insurance policy issued by Lincoln Security Life Insurance Company or ReliaStar Life Insurance Company of New York which contains or contained an Exchange provision allowing the policy owner to exchange the policy for a whole life or endowment policy in an amount of insurance equivalent to the current or then current amount of the insured's death benefit under that policy plus the cash value of the new policy on the date of exchange less the cash value of the current or then current policy, with premium charged based on the same rate class as the current or then current policy, and which was in force at any time after ReliaStar Life Insurance Company of New York stopped issuing whole life and endowment policies.

21. Plaintiff also seeks to represent a subclass of all Class members who own or owned a policy meeting the description in the class definition who live or at the time of ownership of their class policy lived in the state of New York (the "New York Subclass").

22. Plaintiff also seeks to represent a subclass of all Class members whose policies have matured and who received a maturity notice informing the policy owner of the option of extending the coverage at no cost with a death benefit equivalent to the Net Account Value at the time of maturity but not informing them of the option to exchange the policy for a whole life or endowment policy in an amount of insurance equivalent to the current or then current amount of the insured's death benefit under that policy plus the cash value of the new policy on the date of exchange less the cash value of the current or then current policy, with premium charged based on the same rate class as the current or then current policy (the "Matured Policy Subclass").

23. This case may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because there is an ascertainable Class, a well-defined community of interest, and a Class so numerous as to make it impracticable to bring all of its members before the Court. In addition, the adjudication of this action as a class action is a superior method of resolving this

controversy, and substantial benefits will accrue to members of the Class, the public and the Court. All of the prerequisites for class certification are satisfied.

24. The members of the Class are so numerous that joinder in one action is impracticable. While the exact number of Class members can only be ascertained through discovery, it is believed that there are hundreds or thousands of members of the proposed Class.

25. Defendant has acted and continues to act on grounds generally applicable to each member of the plaintiff Class, thereby making appropriate relief with respect to the class as a whole.

26. There are questions of law and fact common to all Class members or subclass members and these common questions predominate over any questions that may affect individual Class members, as ReliaStar has engaged in a common course of conduct in dealing with the Class and acted in a manner generally applicable to the entire Class. The common questions include, *inter alia*, the following:

(a) Whether ReliaStar notified the policy owner that the Exchange Option would no longer be available under their policy because ReliaStar would no longer be issuing whole life or endowment policies;

(b) Whether ReliaStar's elimination of the Exchange Option under the class policies breached the express terms of those policies;

(c) Whether ReliaStar's elimination of the Exchange Option under the class policies breached an implied term or implied covenant of good faith under those policies;

(d) Whether ReliaStar's sending maturity notices informing policy owners of the option of extending the coverage at no cost with a death benefit equivalent to the Net Account Value at the time of maturity but not informing them of the option to exchange the policy for a whole life or endowment policy in an amount of insurance equivalent to the current or then current amount of the insured's death benefit under that policy plus the cash value of the new policy on the date of exchange less the cash value of the current or then current policy, with premium charged based on the same rate class as the current or then current policy, constitutes actionable fraud by concealment or breach of a duty to disclose or inform;

441468

(e) Whether ReliaStar's sending other communications informing policy owners of options or alternatives under their policies without informing them of the option to exchange the policy for a whole life or endowment policy in an amount of insurance equivalent to the current or then current amount of the insured's death benefit under that policy plus the cash value of the new policy on the date of exchange less the cash value of the current or then current policy, with premium charged based on the same rate class as the current or then current policy, or without informing them of the planned elimination of that Exchange Option, constitutes actionable fraud by concealment or breach of a duty to disclose or inform;

(f) As to the New York subclass, whether ReliaStar's elimination of the Exchange Option by terminating its issuance of whole life and endowment policies without notice to the subclass violates General Business Law §349;

(g) Whether Plaintiff and members of the Class are entitled to declaratory relief;

(h) Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, pay damages, and pay treble damages as a result of the above-described practices;

(i) The appropriate type of relief for the loss of the option to exchange the policy for a whole life or endowment policy in an amount of insurance equivalent to the current or then current amount of the insured's death benefit under that policy plus the cash value of the new policy on the date of exchange less the cash value of the current or then current policy, with premium charged based on the same rate class as the current or then current policy; and

(j) The value of the option to exchange the policy for a whole life or endowment policy in an amount of insurance equivalent to the current or then current amount of the insured's death benefit under that policy plus the cash value of the new policy on the date of exchange less the cash value of the current or then current policy, with premium charged based on the same rate class as the current or then current policy.

27. The claims of Plaintiff Iacono are typical of the claims of the Class, as all of their claims arise out of the same unlawful conduct by ReliaStar.

28. Iacono will adequately and fairly protect the interests of all members of the proposed Class and each Subclass because he has the requisite personal interest in the outcome of this litigation, and has no interest antagonistic to any member of the proposed Class and each Subclass.

29. Iacono is represented by Engstrom, Lipscomb & Lack and Ansell Grimm & Aaron,

P.C., whose attorneys are experienced in complex federal litigation, financial services litigation, class action litigation, and consumer protection litigation.

30. A class action is the superior method for a fair and efficient adjudication of the controversy alleged herein, as Defendants have acted in a manner generally applicable to the class and a class action will avoid numerous separate actions by class members that would unduly burden the courts and create the possibility of inconsistent decisions, thereby making final relief appropriate as to the Class as a whole.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

31. Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

32. Plaintiff brings this Cause of Action individually and on behalf of the members of the Class.

33. On or about February 17, 1989, the Policy came into effect. Under the terms of the Policy, Plaintiff agreed to pay sufficient premium to keep a positive Net Account Value in the Policy, and Defendant agreed to pay a death benefit of $178,000 (less any outstanding loans) and committed to provide Plaintiff with several conversion or exchange options in the event Plaintiff wished to switch to another type of insurance. The Policy recites in the first of its General Provisions that it is a "legal contract."

34. Plaintiff performed all obligations on his part to be performed under the Policy, including paying all required premium to keep the Policy in force to its maturity.

35. As part of the consideration from Defendant given to Plaintiff in return for Plaintiff's faithful payment of the premium required to keep the Policy in force for 30 years, Defendant agreed that Plaintiff could exchange the Policy for any whole life or endowment policy

10

Defendant issued at the time of the exchange in an amount of insurance equivalent to the current amount of the death benefit under the Policy plus the cash value of the new policy on the date of exchange less the cash value of the Policy, with premium charged based on the same rate class as the Policy. Plaintiff sought to exercise that option upon the maturity of his Policy.

36. Defendant, its affiliates, predecessors or related entities entered into similar contracts with every other Class member, and each of those contracts contained the same Exchange Option.

37. Defendant breached its contract with Plaintiff, and with every other Class member, by halting the issuance of individual whole life or endowment policies without any notice to Plaintiff or other Class members, such that the Exchange Option became an empty and illusory promise that Defendant would not fulfill because there was no longer any whole life or endowment policy into which a policy holder could exchange and because Defendant never even notified Plaintiff or other Class members of any deadline or expiration date by which they would have to exercise the Exchange Option and after which that option would no longer be available. If Plaintiff and the Class had known that the Exchange Option would become unavailable, they would have had a fair opportunity to exercise it while ReliaStar still offered whole life and endowment policies to exchange into.

38. As a direct and proximate result of the Defendant's breaches, Plaintiff and the Class have suffered and continue to suffer significant damages.

**SECOND CAUSE OF ACTION**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

39. Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

40. Plaintiff brings this Cause of Action individually and on behalf of the members of the Class.

41. Defendant entered into a contract with Plaintiff and the members of the Class for the provision of flexible premium adjustable life insurance policies.

42. Defendant violated reasonable standards of good faith and fair dealing by enticing Plaintiff and the members of the Class to pay premiums and uphold their contractual obligations despite Defendant's refusal to uphold its contractual obligations and Defendant's affirmative actions taken to destroy or injure its counterparty's right to receive the fruits of the contract -- thereby frustrating or defeating a purpose of the subject policies.

43. Defendant misled and/or concealed from Plaintiff and the members of the Class information concerning their ability to exercise the Exchange Option for their flexible premium adjustable life insurance policies, and failed to give notice to the holders of those types of policies, including Iacono, that the Exchange Option would need to be exercised by a date certain -- as ReliaStar would cease issuing the types of policies into which that contract option would allow the policyholder to exchange.

44. Defendant further violated reasonable standards of good faith and fair dealing by depriving Plaintiff and the other Class members of the benefit of the Exchange Option and by destroying the right of Plaintiff and all other Class members to receive the fruit of that particular contract provision. Plaintiff and other Class members reasonably understood that providing an option to exchange into a different type of policy carried with it a promise that the different type of policy would be available to exchange into, and that the option which was part of the consideration for their years of premium payments would not be an empty promise that could not be fulfilled.

441468

45. As a direct and proximate result of the Defendant's breaches of the implied covenant of good faith and fair dealing, Plaintiff and the Class have suffered and continue to suffer significant damages.

**THIRD CAUSE OF ACTION**
**(Fraudulent Concealment)**

46. Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

47. Plaintiff brings this Cause of Action individually and on behalf of the members of the subclass of Class members who received maturity notices informing the policy owner of the option of extending the coverage at no cost with a death benefit equivalent to the Net Account Value at the time of maturity but not informing them of the option to exchange the policy for a whole life or endowment policy in an amount of insurance equivalent to the current or then current amount of the insured's death benefit under that policy plus the cash value of the new policy on the date of exchange less the cash value of the current or then current policy, with premium charged based on the same rate class as the current or then current policy.

48. Defendant's advising policyholders in maturity notices that they had an option to extend coverage at no cost with a death benefit equivalent to the Net Account Value at the time of maturity created a duty on the part of Defendant to disclose completely and accurately all the options policyholders had under their flexible premium adjustable life policies for retaining or continuing life insurance coverage upon maturity of the policies, including the Exchange Option described above.

49. The failure to disclose the Exchange Option in maturity notices that disclosed the option of extending coverage was a material concealment in that knowing the Exchange Option was one of the alternatives to preserve insurance coverage upon maturity of the policy would be

necessary for a reasonable policyholder to make an informed decision as to what course of action to take to preserve or continue insurance coverage upon maturity without re-underwriting of the risk. By omitting the Exchange Option from a letter informing Plaintiff and other subclass members of one available option on maturity, the letter led Plaintiff and other subclass members to believe the Policy did not offer other options.

50. ReliaStar intended to conceal the existence of the Exchange Option, or to mislead Plaintiff and other policyholders in the subclass into failing to discover that option, because ReliaStar knew that it had stopped issuing any policies of the type described in the Exchange Option without giving any notice to its policyholders who had that option, and knew that it would be unable to fulfill the promise in those policies if the policyholders attempted to exercise the Exchange Option.

51. Plaintiff and other subclass members actually relied on the concealment of the Exchange Option in that all of them chose one of the options presented in the maturity letter. Those that chose to continue coverage under the extended coverage option evidenced a desire to keep coverage in place on a paid-up basis, and would have chosen to do so under the Exchange Option, which in almost all cases would have allowed them to retain a higher amount of coverage. Reliance was justified in that a reasonable policyholder would have considered the information about the Exchange Option that was withheld important to know in choosing a course of action to preserve or continue insurance coverage upon maturity without re-underwriting of the risk.

52. As a direct and proximate result of the Defendant's concealment of the Exchange Option, Plaintiff and the Class have suffered and continue to suffer significant damages.

441468

# FOURTH CAUSE OF ACTION
**(Deceptive Acts or Practices, In Violation of New York General Business Law § 349, *et seq.*)**

53. Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

54. Plaintiff brings this Cause of Action individually and on behalf of the members of the New York Subclass against Defendants.

55. By the acts and conduct alleged herein, specifically by eliminating whole life and endowment policies and thereby making it impossible for policyholders to exercise an option in their policies, all without any notice to those policyholders or even the agents on the policies, Defendant committed unfair or deceptive acts and practices.

56. The foregoing deceptive acts and practices were directed at consumers.

57. The foregoing deceptive acts and practices are misleading in a material way because they allow policy owners to believe they have an option to convert to whole life or endowment policies at or before maturity—an option that was part of the policy sold to them—when in fact that option was surreptitiously and indirectly eliminated by ReliaStar terminating its issuance of whole life and endowment policies.

58. Plaintiff and members of the New York Subclass were injured because: (a) they were deprived of a policy benefit that had been included in the policy sold to them without so much as notice to them and without any premium reduction reflecting the loss of that available benefit; (b) they paid premium for their policies based on, among other factors, the value of the Exchange Option when in fact, unbeknownst to them, they did not have that option available to them; and (c) the policies did not have one of the characteristics and benefits promised because the Exchange Option had been removed. As a result, Plaintiff and the New York Subclass have

441468

been damaged because they have lost out on a valuable benefit and have each paid premium for a policy that was supposed to, and that states it did, include that benefit.

59. ReliaStar willfully and knowingly violated New York General Business Law §349 by indirectly eliminating the Exchange Option without giving its policyholders any notice or opportunity to exercise that option before stopping the issuance of the types of policies to which the option allowed policyowners to convert.

60. On behalf of himself and other members of the New York Subclass, Plaintiff is entitled to recover actual damages or fifty dollars per subclass member, whichever is greater; three times actual damages; and reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

61. Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

62. Plaintiff brings this Cause of Action individually and on behalf of the members of the Class pursuant to 28 U.S.C. §2201.

63. An actual and justiciable controversy exists between Plaintiff and Defendant in that Plaintiff contends Defendant effectively eliminated the Exchange Option, a policy benefit stated to be available to Plaintiff and all class members, by halting the issuance of the type of policies into which policyholders could exchange under the Exchange Option without any notice to the policyholders, and that by doing so, Defendant breached its contracts, fraudulently concealed facts from the Matured Policy Subclass, and committed a deceptive practice as to the New York Subclass. Defendant denies all those allegations.

64. The controversy involves actual, present prejudice to Plaintiff and those class members holding flexible premium adjustable life policies issued by ReliaStar or its predecessor by merger, Lincoln Security Life Insurance Company, that contain the Exchange Option, and

441468

actual prejudice to those class members whose flexible premium adjustable life policies issued by ReliaStar or its predecessor by merger, Lincoln Security Life Insurance Company, contained the Exchange Option and matured after ReliaStar stopped issuing whole life and endowment policies.

65. Plaintiff is entitled to a declaration of his rights and the rights of the Class and Subclass members as against Defendant arising out of the elimination of the Exchange Option as described above, together with a declaration that Plaintiff and all other class members are entitled to damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, the New York Subclass, and the Matured Policy Subclass, prays for the following relief:

A. For an order certifying the nationwide Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class Representatives and his attorneys as Class Counsel to represent the Class members;

B. For an order declaring that Defendants' conduct breaches the insurance contract, works a fraudulent concealment on the Matured Policy Subclass, and violates the New York General Business Law §349 as to the New York Subclass, entitling Plaintiff and the class and Subclass members to damages in an amount to be determined by the Court or jury;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. For an order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For an order awarding Plaintiff and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable by a jury.

Dated: June 8, 2020 **ANSELL GRIMM & AARON, P.C.**

*s/ Joshua S. Bauchner*
Joshua S. Bauchner, Esq.
jb@ansellgrimm.com
Seth M. Rosenstein, Esq.
smr@ansellgrimm.com
365 Rifle Camp Road
Woodland Park, New Jersey 07424
(973) 247-9000 (t)
(973) 247-9199 (f)

*Attorneys for Plaintiff and the Proposed Class*

**ENGSTROM, LIPSCOMB & LACK**

*s/ Steven C. Shuman*
Steven C. Shuman, Esq. (*Pro Hac Vice Pending*)
sshuman@elllaw.com
10100 Santa Monica Boulevard, Suite 1200
Los Angeles, California 90067-4113
(310) 552-3800 (t)
(310) 552-9434 (f)